*658 OPINION.
Trammell:
The facts relating only to two issues are set out in the findings of fact. The petitioner, however, in its petition claimed that it was entitled to a deduction on account of the exhaustion, wear and tear of assets in excess of the deduction allowed by the Commissioner. Considerable testimony was introduced as to what the depreciation on certain assets allowed by the Commissioner was, but there is no evidence of record upon which we could find what is a reasonable deduction to be allowed the petitioner on account of the exhaustion, wear and tear of its assets, and for that reason we are unable to make a finding of fact upon that question. The determination of the Commissioner, therefore, with respect to the amount of depreciation, is approved.
On the question of the amortization deduction claimed by the petitioner, the question arises as to whether the petitioner acquired the buildings in question as facilities for the production of articles contributing to the prosecution of the war.
It is argued that the removal of coal from the ground is not the production of coal and that the petitioner did not produce articles contributing to the prosecution of the war. We believe, however, that the bringing of coal from the ground and making it fit for use by mining operations is the production of an article. While in the ground it is useless. Mining it and thereby making it commercially useful is, in the economic sense, production. This is also the common understanding of the meaning of the word when applied to natural resources.
The question then is whether coal furnished to railroads and others under the orders and directions of the United States Fuel Admin *659 istration as well as coal fu.mish.ed to manufacturers, may be said to have been an article which contributed to the prosecution of the war. From 75 to 85 per cent of the output of the petitioner’s mine was furnished either to the Government for use in camps and cantonments, or to railroads or others under compulsion of an agency of the United States Government. It seems to us that it can not be questioned that coal furnished to the Government for the use of its Army camps and cantonments was an article which contributed to the prosecution of the war. We think also that coal furnished to railroads and steamship companies clearly contributed to the prosecution of the war. An adequate supply of coal, not only for such purposes but for private manufacturing concerns, was considered so important by the Government that the United States Fuel Administration was created for the purpose of supervising the distribution of coal and to make adequate provision for fuel to be supplied to industries in the United States and to railroads.
The amortization section does not provide that the articles produced must be absolutely necessary or essential to the prosecution of the war, but only that they contribute thereto. Efficient operation of the railroad systems and the carrying on of manufacturing operations, especially by those plants which the Fuel Administrator considered were entitled to receive coal, in our opinion, were instru-mentalities which contributed to the prosecution of the war, and we believe that coal used for the purpose for which the petitioner’s output was used was an article which contributed to the prosecution of the war.
The houses which the petitioner was required to build on account of war conditions, and the fact that it could not otherwise secure laborers or employees in order to produce the coal, are, in every substantial sense of the word, facilities acquired for the production of an article contributing to the prosecution of the war. The petitioner’s mine was located in an isolated community. It had no labor supply upon which it could draw. It was necessary to bring in employees. Unmarried men who had been employed by the petitioner had gone to war and it was necessary to have married men carry on the work. Married men would not accept employment unless adequate housing facilities were provided.
These houses were built by the petitioner during 1918 at a cost of $44,400. Twenty of them were never used or occupied and were abandoned and became useless, except for such residual value as they may have had. The testimony is that the residual value of each house abandoned was $50. The cost of the houses was $896.42 each, except two, which had cost $1,200 each. One of the $1,200 houses was among those abandoned. This makes a total of 19 houses *660 at $896.42 each, and one at $1,200, which were abandoned. The residual value of these 20 houses was $1,000.
The deduction with respect to the houses erected in 1918 and entirely abandoned is the difference between their cost and their residual value.
The other 32 houses erected in 1918 were used and occupied, but by using them the petitioner abandoned an equal number of other houses which it would have used if it had not erected them, and in addition thereto the petitioner had other houses which were not used and were not useful in its post-war business. There was a surplus of at least one house for each one. occupied. The usefulness of these houses in the business would thus be 50 per cent. In our opinion, a reasonable allowance on account of amortization with respect to these 32 houses should be determined by taking these facts into consideration.
With respect to these houses (which we have held to have been useful in the business to the extent of 50 per cent), in view of all the evidence in the case, in our opinion a reasonable allowance on account of amortization is $12,500.
The amortization deduction should be allowed in 1918. Appeal of Walcott Lathe Co. 2 B. T. A. 1231; Appeal of John Polachek, 3 B. T. A. 1051.
On the question of the deductibility as expense of the articles of equipment and parts which were purchased by the petitioner during 1918 which did not increase production and were not acquired for that purpose, we do not consider that the petitioner is entitled to the deduction claimed. The articles were capital items. Appeal of Union Collieries Co., 3 B. T. A. 540; Appeal of Kirk Coal Co., 3 B. T. A. 755.

Judgment will be entered after 15 days’ notice, under Bule 50.